UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL CASE NO. 07-36 |
| : | |
| v.  : | |
| : | |
| DAVID MAISENHELDER : | |
| : | |
| Defendant. : | |

DETENTION MEMORANDUM

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Detention Memorandum to address the Court's concern regarding whether there are any conditions or combination of conditions that will assure the safety of the community if the defendant is released pending trial. As will be demonstrated in this Memorandum, there are no conditions or combination of conditions that will assure the safety of the community.

On November 1, 2006, Metropolitan Police Department Regional Internet Crimes Against Children's Task Force began an on-line chat with defendant David Maisenhelder. The investigation resulted in the defendant sending images of children depicted in pornographic materials, including photographs and video movies, to undercover MPD Detective Palchak on February 5, 2007. Thereafter, MPD detectives obtained a search warrant for the premises and work area of the defendant for computers and any other devices which can store images. The search of defendant's house revealed several hundred pieces of evidence including, but not limited to, one disc containing at least five hundred (500) still and video images of children ranging in ages three months to early teen years depicted in sexually explicit poses and activities, including sexual intercourse by adult men. The search also revealed pornographic and related

materials dating back to the mid nineteen seventies. Moreover, in 2004, the defendant was investigated by the Federal Bureau of Investigation for engaging in similar conduct. However, the investigation was closed due to the fact that the defendant did not send any pornographic material over the internet to the investigating agent and merely was a member of chat room which consisted only of pedophiles.

On February 13, 2007, the defendant was indicted for Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). Distribution of Child Pornography is an offense defined as a crime of violence under 18 U.S.C. § 3142(f)(1)(A). As such, pursuant to 18 U.S.C. § 3142 (f), a hearing was held to determine the existence of any condition or combination of conditions of release that would reasonably assure the safety of the community and other persons. "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense ... for which a maximum term of imprisonment of ten years or more is prescribed or an offense involving a minor victim under section 2252(a)(2)." See 18 U.S.C. § 3142 (c).

On February 21, 2007, a detention hearing was held before this court. Probable cause was established by the fact that the defendant had already been indicted. Thereafter, the government proceeded by proffer which included a submission of several photographs to the court containing images including but not limited to one photograph of an infant and one of a toddler engaged in sexual intercourse with adults that were sent by the defendant to MPD Detective Palchak over the internet from the defendant's computer to the work computer of Detective Palchak. The government further proffered the defendant's admission, including his

2

statement admitting to sending the aforementioned photographs to Detective Palchak and his statement that he cannot keep himself from viewing, sending, and receiving child pornography. The Court delayed its ruling on the government's motion to preventively detain the defendant pending trial to February 26, 2007, to provide the defendant an opportunity to show if the Navy could assist in creating conditions or combination of conditions that would assure the safety of the community or any person if defendant is released. As the attached Memorandum from T.K. Kiss, Commanding Officer of the USS Stout demonstrates, there are no such conditions. Further, for Your Honor's information we have attached a Memorandum on the Correlation Between Viewing Child Pornography and Acting on Those Impulses and the Impact on Child Victims.

WHEREFORE, the government requests that its motion for pretrial detention of the defendant be granted.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
Bar No. 498610

By: _____
Debra Long-Doyle
D.C. Bar #362518
Angela Hart-Edwards
PA Bar #61468
Assistant United States Attorneys

U.S. Attorney's Office
Federal Major Crimes
555 4th Street, N.W
Washington, D.C. 20530

<u>US v. Darnell Stewart, 06-199 (GK)</u>

<u>Sgt. Chagnon trial questions</u>

- ☐ Introduce yourself to the Jury
- ☐ Where are you employed?
- ☐ How long have your worked there?
- ☐ What experience do you have?
- ☐ Do you have experience buying / selling drugs?
- ☐ On June 13, 2006, were you working?
  [Yes, we were conducting an OP operation in the area of the 1600 block of V Street, SE]
- ☐ What is an OP operation
  [Explain Observation Post, secret location, OP officer observes, lookout, arrest team]
- ☐ Why were you conducting an OP operation in the 1600 block?
  [citizen complaints for lots of drug activity in area]
- ☐ [EXHIBIT #1 (aerial of area)] Do you recognize this?
  [Yes, that's an aerial of the area, including the 1600 block of V Street, SE]
- ☐ Who was in the OP on June 13, 2006?
  [Officers Turner, Myers and Anderson]
- ☐ About what time?
  [7:30 p.m. - 9:30 p.m.]
- ☐ Was an arrest eventually made that evening?
  [Yes, defendant Darnell Stewart]
  [in court ID]
- ☐ What happened?
  [Pulled the defendant and vehicle over – blue Dodge Magnum]
- ☐ Where?
  [16th & Minnesota, 1800 block of 16th Street, S.E.]
  [EXHIBIT #1 (aerial of area)]
- ☐ Who participated in the arrest?
  [Myself, Officer Rollins completed the arrest, other assisting officers]
- ☐ Why was the defendant pulled over?
  [We were given a lookout from the OP. Officer Turner had indicated that the driver of the Dodge Magnum had just driven out of the 1600 block of V Street, and Officer Turner had indicated that from the OP he had observed the suspect participating in suspected drug transactions in the 1600 block of V Street, S.E.]
- ☐ What conduct do you recall Officer Turner reported observing with respect to the suspect
  [Two separate apparent transactions. suspect received cash, walked to the Magnum, leaned toward center of vehicle, walked back to individual and handed small unknown object]
- ☐ Was a description of the suspect given?
  [Description of suspect]
- ☐ Was a description of the vehicle given?
  [Description of vehicle]
- ☐ Approximately when did Officer Rollins broadcast that the Dodge was leaving the block?
  [9:20 p.m.]

- ☐ When and Where did you first observe the Dodge?
  [9:20 p.m., or a minute or two later, in a patrol vehicle on Good Hope Road, near 16th Street, S.E.]
- ☐ Who was in your vehicle
  [Myself, Officer Rollins and Siebert]
- ☐ Why was the defendant pulled over at 16th & Minnesota?
  [Because of Officer Turner's observations, we believed the vehicle contained narcotics and that the driver had been engaged in drug sales.]
- ☐ When you had the vehicle stopped, what degree of certainty did you have that you were pulling over the vehicle Officer Turner had observed leaving the 1600 block of V Street, a minute earlier?
  [Certain because . . . ]
- ☐ Who was inside
  [Just the defendant]
- ☐ What happened after the vehicle was pulled over?
  [The defendant was placed in cuffs]
- ☐ Was the vehicle searched?
  [Yes]
- ☐ By who?
  [Officer Rollins, Crime Scene Officers]
- ☐ At the arrest scene, what if anything else was done with respect to identifying the defendant?
  [OP Officers did a show up ID and identified the defendant as the suspect from the 1600 block of V Street, S.E.]
- ☐ What is a show up ID?
  [Describe – done with officer witnesses or civilian witnesses shortly after events]
- ☐ Why do you have a show up done?
  [To make sure police are arresting the right person; but in this case, the defendant would have been arrested anyway because of the items found in the car he was driving]
- ☐ Are you aware of what items, if any, were recovered at the arrest scene during the search?
- ☐ Was the defendant formally arrest?
  [Yes]
- ☐ Where was he taken?
- ☐ [EXHIBIT # 2 (photo of car w/ plate)] Do you recognize this?
- ☐ [EXHIBIT # 3 (photo of defendant)] What is this?
- ☐ [EXHIBIT #4 (photo of entire vehicle)] What is this?
- ☐ Do you know who owns the vehicle?
  [It was later determined through certified DMV records that the vehicle is owned by the defendant, Darnell Stewart, with date of birth April 28, 1979]
- ☐ [EXHIBIT #5 (certified vehicle registration)] What is this?
- ☐ [EXHIBIT #6 (certified driver's license)] What is this?
- ☐ [EXHIBIT #7 (certified Title Application)] What is this?
- ☐ [EXHIBIT #___ (certified State Farm record)] What is this?
- ☐ Exhibits 1, 2, 3, 4, 5, 6, 7 and 7a.

------------------------------------------------

☐    Why not recorded channel?

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | MAGISTRATE NO. 07-0033M01 |
| | : | |
| **DAVID MAISENHELDER** | : | |
| | | |
| **Defendant.** | : | |
| | : | |

**ORDER**

Having considered probable cause established by the indictment in this matter and the government's proffer, and defendant's response thereto, it is hereby ORDERED that the government's motion to detain the defendant pretrial is granted this ____ day of February, 2007.

_____
U.S. Magistrate Judge Alan Kay

**MEMORANDUM**

TO:        Magistrate Judge Alan Kay
FROM:   Assistant U.S. Attorneys Debra Long-Doyle and
             Angela Hart-Edwards

RE:        Child pornography cases citing a correlation between viewing child
             pornography and escalation to acting on those impulses

Defendants suspected of child pornography offenses may pose a danger to society because of the potential connection between viewing child pornography and acting on those impulses. Those who possess and use child pornography become desensitized and eventually view the depictions in the pornography as acceptable behavior, which gives them permission to carry out their desires as the behavior escalates from merely viewing to finally acting. Dr. Victor B. Cline, *Pornography's Effects on Adults & Children*, Morality In Media, 12 * 4 (2001). The nature of these crimes involve addiction, which leads to escalation and a need to act out. More importantly, even after pedophiles have been caught and reprimanded, courts have found it is common for them to "continue their aberrant conduct even in the face of warnings." United States v. Cocco, 604 F.Supp.1063 (M.D.P.A. 1985).

"Both Congress and the courts have acknowledged a link between [child pornography and molestation." United States v. Hersh, 297 F.3d 1233 (11th Cir. 2002). On the Congressional side, Congress highlighted this connection in findings for the Child Pornography Prevention Act of 1996, 110 Stat. 3009, Sec. 121 (codified at 18 U.S.C. 2251). In that bill, Congress declared:

> "child pornography is often used as part of a method of seducing other children into sexual activity. A child who is reluctant to engage in sexual activity with an adult . . . can sometimes be convinced by viewing depictions of other children 'having fun' participating in such activity." See Finding (3)

The findings continued:

> "child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children; such use of child pornography can desensitize the viewer to the pathology of sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer." <u>See</u> Finding (4).

Congress's views on this issue were laid out even more clearly in the Senate Committee Report to the Child Pornography Prevention Act (S. Rep. No. 104-358 at 12-14 (1996)), which included references to the testimony of a number of experts supporting this correlation:

> "Child pornography stimulates the sexual appetites and encourages the activities of child molesters and pedophiles, who use it to feed their sexual fantasies. Law enforcement investigations have verified that pedophiles almost always collect child pornography or child erotica. While some only collect and fantasize about the material without acting upon those fantasizes, in many cases coming to the attention of law enforcement the arousal and fantasy fueled by child pornography is only a prelude to actual sexual activity with children. Mrs. Dee Jepsen, president of Enough is Enough, testified at the June 4, 1996, Committee hearing that *pornography `is an addiction that escalates, requiring more graphic or violent material for arousal, then leads to the persons in the materials being seen as objects, without personality, rights, dignity or feelings. The final stage is `acting out,' doing what has been viewed in the pornography.* This leads to crimes of sexual exploitation and violence. * * * In the case of pedophiles * * * child pornography is actually `hard-copy' visualizations of their dangerous mental fantasies of having sex with children.' Dr. Victor Cline testified at the June 4, 1996, hearing:
>
>> [t]he best evidence to date suggests that most or all sexual deviations are learned behavior. * * * In the case of pedophiles, the overwhelming majority * * * use child pornography and/or create it to stimulate and whet their sexual appetites which they masturbate to then use later as a model for their own sexual acting out with children. * * * [T]he use of child pornography in time desensitizes the viewer to its pathology no matter how aberrant or disturbing. It becomes acceptable and preferred. The man always escalates to more deviant material, and the acting out continues and escalates despite very painful consequences such as destruction of the family, loss of spouse, children, job, health or incarceration after committing criminal acts. * * * [A]ny kind of pornography, child or adolescent * * * can act as an incitement to imitate it in real life with someone they have access to and can intimidate not to tell. * * * With a large majority of them an underlying thread is the use of child, adolescent, or adult pornography to stimulate appetite and provide models of sexual abuse as well as be used as tools to seduce new victims. In my experience, it's the child pornography that is the most malignant.

> Child pornography is used by pedophiles and child molesters as a facilitator or `training manual' in acquiring their own deviation, and also as a device to break down the resistance and inhibitions of their victims or targets of molestation, especially when these are children. *In her book `Child Pornography,' Dr. Shirley O'Brien states `a direct relationship exists between pornographic literature and the sexual molestation of young children. Law-enforcement officers say they routinely find pornographic materials when they investigate sex crimes against children.'* A child who may be reluctant to engage in sexual activity with an adult, or to pose for sexually explicit photos, can sometimes be persuaded to do so by viewing depictions of other children participating in such activity."

Courts have tended follow the same logic as Congress in recognizing a correlation between child pornography and escalating sexual crimes against children. For example, the Supreme Court stated that "evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." Osborne v. Ohio, 495 U.S. 103, 111 (1990). The Court called reference to a 1986 study by the Attorney General's Commission on Pornography, which states "a child who is reluctant to engage in sexual activity with an adult or to pose for sexually explicit photos can sometime be convinced by viewing other children having 'fun' participating in the activity." Id. at 111, n7. This language almost directly parallels the language of the finding (3) of the Child Pornography Prevention Act.

Using this logic, several courts have determined that defendants accused of child pornography should not be released because of the danger that release would pose to the community. For example, in United States v. Hernandez, 154 F.Supp.2d 240, 242 (D. Puerto Rico), the court declined the opportunity to release a defendant who was found with 15 images of minors ages 2-12 on his computer, and who had been accused of soliciting a 10-year-old female at summer camp to come to his house. Among its reasons, the court cited that the "defendant has admitted that his addiction to pornography

was so strong that he began to act out the visual depictions with minor females." Id. at 244. In another case, the court declined to release a defendant suspected of child pornography distribution and molestation because of expert testimony stating that "exclusive pedophiles, [i.e. those primarily sexually attracted to children], are rarely, if ever, successfully treated. . . . [Therefore,] release [of the defendant] would pose a serious danger to the community, particularly young boys, unless his activities were monitored at all times." United States v. Reinhart, 975 F.Supp. 834, 839 (W.D.L.A. 1997).

In the D.C. Circuit, federal case law is limited on this point. The case that comes closest to addressing this is United States v. Long, 328 F.3d 655 (D.C. Cir. 2003). In that case, the defendant attempted to cite a Ninth Circuit case that suggested the defendant's possession of sexually explicit magazines, including those with "erotic stories about men engaging in sex with underage boys," did not indicate that he had "actually engaged in, or even had a propensity to engage in, any sexual conduct of any kind." Guam v. Shymanovitz, 157 F.3d 1154, 1158-59 (9th Cir. 1998). The D.C. Circuit did not express a view on the merits of this argument, but they did state that "even if this is correct," the court could allow evidence at trial of pornographic materials for purposes "that were both specific and unrelated to propensity." Long, 328 F.3d at 664. In the instant case, we are not using the defendant's child pornography at this stage to show past propensity or actual engagement in molestation. Rather, we are trying to indicate that possession of such materials is grounds to deny his release because of the risk of recidivism or escalated molestation. If the court is willing to leave the door open to use of child pornography for propensity purpose in the restrictive environment of a trial, that at least

suggests that such a propensity argument might have some merit in the less restrictive pre-trial detention setting.

Case 1:07-cr-00036-CKK     Document 7-3     Filed 02/26/2007     Page 5 of 5



**DEPARTMENT OF THE NAVY**
USS STOUT (DDG 55)
FLEET POST OFFICE
AE 09587-1273

```
                                                  1000
                                                  DDG55/ADM
                                                  23 Feb 07
```

From: Commanding Officer, USS STOUT (DDG 55)
To:   Ms. Katherine Smith, Supervisory Special Agent,
      Criminal Investigations & Operations,
      NCIS Field Office Washington, DC

Subj: DAVID W MAISENHELDER, GSMC/E7, USN, XXX-XX-8060

1. The following information is provided in response to questions regarding Chief Petty Officer Maisenhelder's apprehension and legal proceedings pertaining to violation of 18USC2252.

    a. As Commanding Officer of USS STOUT (DDG 55), I am responsible for preparing my ship and crew for mission tasking.

    b. STOUT is an operational guided missile destroyer that will deploy for six months beginning in July 2007. Between now and the start of deployment, STOUT will spend about seven weeks at sea conducting pre-deployment training. When not at sea, STOUT will conduct required maintenance and training to prepare for deployment.

    c. As Commanding Officer, I am also responsible for good order and discipline on my ship. Sailors who commit, or who are alleged to have committed, serious crimes are detrimental to good order and discipline, and unit cohesion. Based on the charges and evidence I have seen, I have initiated administrative discharge procedures to separate Chief Maisenhelder from the Navy. Navy regulations permit me to initiate this process without a civil or military court finding of guilt or innocence if the preponderance of evidence leads me to believe that the offense occurred. This process normally takes several weeks. If Chief Maisenhelder is released from custody, I will not allow him to return to my ship because of the detrimental effect that would have on my crew. I will temporarily assign him to a shore-based command until the administrative separation process is complete.

Subj: DAVID W MAISENHELDER, GSMC/E7, USN, XXX-XX-8060

    d.  If Chief Maisenhelder is released from custody, I cannot guarantee control of his actions.  He will be assigned to a shore command in the vicinity of Naval Station Norfolk.  It is unlikely that they will be able to guarantee control of his actions.  Because of the on-going civilian legal proceedings, Chief Maisenhelder could not be subjected to any pre-trial confinement in the military justice system.

    e.  While at work ashore, Chief Maisenhelder's activities could be monitored to a limited extent at best, and I cannot guarantee that he would not gain access to a computer, the internet, or to children.  Naval Station Norfolk is the largest naval installation in the world and has numerous recreational venues for both military members and their dependents.

    f.  While on liberty (off duty) ashore, Chief Maisenhelder's activities would be impossible to monitor.  Chief Maisenhelder lives off-base and would be allowed to operate his personally owned vehicles.  His whereabouts and activities would be of his own choosing and he would not be required to report to anyone when in a liberty status.

2.  Because of all the reasons enumerated above, I cannot guarantee any specific conditions for Chief Maisenhelder's release from civilian custody.  If the appropriate authorities believe him to be a threat to the public, I recommend that he be confined until legal proceedings are complete.

3.  If further clarification is needed, please feel free to contact me at 757-445-6215 or via email at co@ddg55.navy.mil.  Additionally, you may contact my Executive Officer, LCDR Martin Arriola AT 757-444-7307 or via email at xo@ddg55.navy.mil.

                                          T. K. KISS