IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| Plaintiff, | : |
| v. | : CRIMINAL NO. 07-36 (CKK) |
| DAVID MAISENHELDER | : |
| Defendant. | : |

### MEMORANDUM IN AID OF SENTENCING

Defendant David Maisenhelder, through counsel, respectfully submits the following Memorandum in aid of his sentencing.

1. On September 21, 2007, David Maisenhelder will come before this Court to be sentenced pursuant to his guilty plea to Transportation of Visual Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C § 2252(a)(1). According to the Pre-Sentence Report (PSR)[1] prepared by the United States Probation Office, Mr. Maisenhelder has no criminal history and, therefore, he falls in Criminal History Category I under the United States Sentencing Guidelines. The PSR also states that Mr. Maisenhelder's Total Offense Level under the Sentencing Guideline is level 32 and that his sentencing guideline range is 121-151 months.[2]

2. In this Memorandum, due largely to Mr. Maisenhelder's background and his early acceptance of responsibility, counsel for Mr. Maisenhelder argues that a sentence of 121 months is an

---

[1]At the time of the writing of this Memorandum, the Final PSR has not yet been prepared. Therefore, all references in this Memorandum to the PSR will be to the draft PSR prepared on August 20, 2007.

[2]The Defense does not dispute the sentencing guideline calculations in the PSR.

appropriate resolution of this case.

## ARGUMENT

**I.    THE POST-<u>BOOKER</u> SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in <u>Booker</u>, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. <u>See</u> 18 U.S.C. § 3553(a)(4)." <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).  While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in <u>Booker</u> held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  Pursuant to <u>Booker</u>, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in <u>Booker</u> – sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the <u>Booker</u> majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of <u>Booker</u>, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After <u>Booker</u>, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

**II.     A SENTENCE OF 121 MONTHS IS A REASONABLE SENTENCE IN THIS CASE.**

    **A.     Background**.

As a result of Mr. Maisenhelder's conviction in the instant case, he will be sentenced in this

matter on September 21, 2007. Significantly, Mr. Maisenhelder has no prior convictions and he will be facing sentencing for the first time in his life when he appears before this Court on September 21.[3] With the exception of Mr. Maisenhelder's conduct in connection with the instant offense, Mr. Maisenhelder has generally lived a productive, honest and law abiding life.

Mr. Maisenhelder was born in St. Louis, Missouri in 1969. PSR, ¶ 35. He grew up in a household that included both of his parents and three siblings. PSR, ¶¶ 35 & 36. Mr. Maisenhelder's father was employed with the United States Army and his mother was a housewife. PSR, ¶ 36. With the exception of dealing with the problems associated with his brother's Down Syndrome, Mr. Maisenhelder had a 'normal childhood.' Id.. Mr. Maisenhelder's mother, Gwen Maisenhelder, notes that Mr. Maisenhelder "has always been a caring, generous and wonderful son." See Exhibit 1. She further advises that Mr. Maisenhelder "would do whatever work was needed" when he lived at home. Id.. Mr. Maiseneder's sister, Sheryl Maisenhelder, recalls how she could "always count on" Mr. Maisenhelder when they were growing up. See Exhibit 2.

Mr. Maisenhelder attended highschool in Missouri and he graduated from highschool in 1987. PSR, ¶ 45. Immediately after graduating from highschool, Mr. Maisenhelder joined the United States Navy. PSR, ¶ 48. Mr. Maisenhelder consistently served in the United States Navy from the time he graduated highschool up to his arrest in the instant offense.[4] In all, Mr. Maisenhelder provided about twenty years of service to the Navy. During these twenty years, Mr. Maisenhelder has risked his life participating in such operations as inspecting and searching ships

---

[3] It appears from the PSR that Mr. Maisenhelder has not even had any previous contacts with the criminal justice system.

[4] Although Mr. Maisenhelder technically remained enlisted with the Navy after his arrest, his status is listed as "unauthorized absence" and he is currently pending separation. PSR, ¶ 47.

for weapons and other items in the Persian Gulf.

Through the Navy, Mr. Maisenhelder received specialized training in maintaining and repairing jet engines. PSR, ¶ 46. During his tenure with the Navy, Mr. Maisenhelder held various positions such as "drill instructor, program inspector, and recruiter. PSR, ¶ 48. Addtionally, Mr. Maisenhelder took some college courses within the Navy. PSR, ¶ 45. At the time of his arrest in this case, Mr. Maisenhelder was employed as a "Chief Petty Officer/gas turbine systems technician." PSR, ¶ 47. According to Mr. Maisenhelder's mother, "David has proudly served his country all of his adult life" and "he has served the Navy well and faithfully." See Exhibit 1.

Shortly after his arrest for the instant offense, Mr. Maisenhelder began demonstrating his willingness to accept responsibility and he showed remorse. On the same day of his arrest, Mr. Maisenhelder readily admitted his unlawful conduct to law enforcement. Mr. Maisenhelder also advised law enforcement that his conduct was wrong and that he wants to cease his involvement in child pornography. Additionally, on the day of his arrest, Mr. Maisenhelder assisted law enforcement in the possible prosecution of others involved in child pornography. Mr. Maisenhelder provided law enforcement with the passwords to accounts with which they had interest and he agreed to allow law enforcement officers assume his screen name and online identity in order to apprehend other suspects.

Mr. Maisenhelder continued to display his acceptance of responsibility by entering a guilty plea in this case and by informing the PSR writer after his guilty plea that he acknowledges having participated in the conduct outlined in the factual proffer in support of the plea. PSR, ¶ 17. Mr. Maisenhelder has even been routinely showing his acceptance of responsibility and remorse to family members and friends. All persons writing letters on Mr. Maisenhelder's behalf state that he has

consistently fully accepted responsibility and that he is extremely remorseful for his actions. For instance, Mr. Maisenhelder's uncle, Joseph McNellage, writes that "David immediately took full responsibility for his actions and has made no effort to blame others for his downfall." Exhibit 4. Mr. McNellage continues by writing that Mr. Maisenhelder "has acknowledged without qualification that he has no one to blame but himself." Id.. With regard to remorse, Mr. Maisenhelder's friend since childhood, Adam Cook, writes that "I know from talking to [Mr. Maisenhelder] that he feels badly for what he has done. This is not only because of the problems he is dealing with on a personal level but for anyone else that may have been affected because of his actions." Exhibit 3.

      Mr. Maisenhelder's family and friends also describe Mr. Maisenhelder as a person with an extremely good overall character. Mr. Maisenhelder's mother describes him as "hard-working and industrious." Exhibit 1. Mr. Maisenhelder's sister writes that her brother "has been a leader to many in the Navy as well as an inspiration to all he meets. He has been proud to serve his country." Exhibit 2. Mr. Maisenhelder's sister also reports that her brother "is a great person" and that he "has always been an upstanding member of the community." Id.. Adam Cook describes Mr. Maisenhelder as one who "very rarely drank alcohol" and one who "didn't do drugs." Exhibit 3. Mr. Cook states that Mr. Maisenhelder is a very "reliable" and "grounded" person. Id.. Mr. Maisenhelder's uncle states that he has "regarded David as the ultimate straight arrow in both is character and behavior." Exhibit 4.

      A common theme which appears in the letters written in support of Mr. Maisenhelder is that his conduct in the instant offense is aberrational and that he will surely be rehabilitated. For example, Mr. Maisenhelder's sister reports that she is certain that her brother's conduct "was an aberration and does not reflect his true character." Exhibit 2. Mr. Maisenhelder's sister further

states that many of Mr. Maisenhelder's family members, friends and Navy colleagues "agree that this is a complete aberration in David's life." Id.. She also advises that Mr. Maisenhelder "wants to take advantage of all counseling available" and that she is "confident that he will overcome this addiction" to pornography. Id..

### B.     18 U.S.C. § 3553(a) Factors.

A sentence of 121 months will more than adequately reflect the seriousness of Mr. Maisenhelder's offense. See 18 U.S.C. § 3553(a)(2)(A). Mr. Maisenhelder's offense is a non-violent offense and there is no evidence that Mr. Maisenhelder ever had any inappropriate contact with children. Therefore, a sentence of 121 months will adequately reflect the seriousness of Mr. Maisenhelder's offense. For these reasons, a sentence of 121 months is more than necessary for purposes of promoting respect for the law and with providing just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A).

A sentence of 121 months is also more than enough incarceration to provide ample deterrence for Mr. Maisenhelder and anyone else who may consider committing a similar crime. See 18 U.S.C. § 3553(a)(2)(B). A ten years and one month sentence is significant punishment and such a sentence will surely send a message to Mr. Maisenhelder and anyone else that crimes involving child pornography will not be tolerated and that the penalty for the commission of such crimes is hefty. Additionally, a 121 months sentence includes a period of supervised release and sex offender registration requirements which will undoubtedly have a significant long term impact on the quality of Mr. Maisenhelder's life.

When considering Mr. Maisenhelder's non-existent prior criminal history, his lifetime character, his remorse and the statements made by Mr. Maisenhelder's family members and friends

regarding his rehabilitation, it is clear that Mr. Maisenhelder will not commit any further crimes in the future. Therefore, a sentence of 121 months will adequately protect the community from any further crimes on the part of Mr. Maisenhelder. 18 U.S.C. § 3553(a)(2)(C).

Finally, when considering the nature and circumstances of the offense along with the history and characteristics of Mr. Maisenhelder,[5] a sentence of 121 months is warranted. Mr. Maisenhelder has no criminal history and has lead a generally honest and respectable life. Mr. Maisenhelder has provided twenty years of life threatening service to the United States government through his work in the United States Navy. When Mr. Maisenhelder was arrested in this case, he quickly accepted responsibility and acknowledged that his involvement with child pornography should cease. Also, upon arrest, Mr. Maisenhelder immediately began assisting law enforcement in their investigatinos against other offenders. Mr. Maisenhelder has learned a serious lesson from his mistake and he wants to take advantage of various opportunities which will ensure that he will not get involved in criminal conduct again. Therefore, this Court should not impose a sentence which is greater than 121 months in this case.

### C.    Conclusion.

For the reasons discussed above, a sentence of more than 121 months will be greater than necessary to satisfy the statutory purposes of sentencing. See 18 U.S.C. § 3553(a). A sentence of no more than 121 months is a just and fair sentence in this case. Therefore, Mr. Maisenhelder respectfully requests that this court impose a sentence in this case which is not greater 121 months.

---

[5] See 18 U.S.C. § 3553(a)(1).

Respectfully submitted,
A.J. Kramer
Federal Public Defender


_____/s/_____
Tony W. Miles
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500

# Exhibit

# 1

June 21, 2007

To the Honorable Colleen Kellar-Kotelly:

My son, Chief Petty Officer David Maisenhelder, has always been a caring, generous and wonderful son to me and to his late father. When he lived at home, he would do whatever work was needed and on leave, he did the same. He is a hard-working and industrious man.

Although I cannot understand what went on inside his mind or in the unreality of cyberspace, I do know his behavior to me and to the rest of the family has always been appropriate and beyond criticism. In the real world, my son has never harmed anyone.

David has proudly served his country all of his adult life. Despite the actions of the Navy toward him, he has served the Navy well and faithfully. He has the good conduct awards to attest to that. I do hope you have access to his records or at least a précis of them so that you can see they are without blemish. I also hope that you have met my son and talked with him. He is an intelligent man who made a monumental mistake and is taking full responsibility for that mistake.

I wish that he had thought of the impact of his internet activities on himself and on those of us who love him, but he is extremely sorry for what he has done. He has written all of us including his late father (I read the letter at his graveside), to express his remorse over causing us such pain and for shaming the family name. He also calls when he has the opportunity.

David is eager, even anxious, to enter therapy so that he can overcome his addiction to pornography. Perhaps the loneliness of his life was a contributing factor, I do not know.

He has the love and support of his family in this trying time. We are not financially able to be with him in Washington, DC, but when he is transferred to a facility on a permanent basis, we intend to visit as often as we can. We will write and call him and if the facility has e-mail capabilities, we will be e-mailing him regularly. Of course, we hope that he can be near enough so that visits will not be of the once or twice a year variety because of distance. However, we know that appropriate treatment is very important.

As long as I am alive, David will have a place to stay. I love my son dearly and always will. He has made me proud of him in the past and I feel his acceptance of responsibility, his remorse and his willingness to cooperate in treatment will make me continue to be proud of him. I know the man and he is not at all as the indictment presents him. In the real world of living human beings, David is and will continue to be a good and decent man.

Sincerely,

Gwen Maisenhelder
2830 Dunkirk Drive
St. Louis, MO 63119
1-314-962-1812

# Exhibit

# 2

810 Lordshill B1
St Louis, MO 63119

June 27, 2007

Honorable Colleen Kollar-Kotelly
United States District Court for the District of Columbia
333 Constitution Avenue NW
Washington DC 20001

Dear Judge Colleen Kollar-Kotelly:

I am writing on behalf of my younger brother David Maisenhelder, who currently is scheduled for sentencing by your Honor. While I know that he has admitted guilt to a serious offense, I would ask that the court consider his character as I know it and show him mercy in meting out his punishment. I have known David my entire life. While I know (and he knows) his behavior was wrong, I am certain that it was an aberration and does not reflect his true character. When you consider his entire life, I hope and pray that you will agree that he deserves punishment tempered by mercy.

Growing up, David was my shadow both at school and at home. Even though he is 2½ years younger then me, I could always count on him whenever I needed him. And whether that was brotherly concern over someone I was dating or making sure my car was working, he was always there for me. He is one of the most devoted and loyal people I have ever met in my life. If you have David in your corner, you know he will be there and will help in whatever way he can. He is a lot like my deceased father in that respect. You can always count on him.

Throughout my brother's twenty-year career in the Navy, we have always stayed in touch via letter, e-mail or phone. That has been no easy task as I, myself, have lived around the country, moving often for my career. Luckily the last eight years have been spent in St Louis to be closer to family, and I have been able to see David in person much more often. He is very close to all of us and comes home at least twice a year for a few weeks each time.

In the last four months as our family and friends have been dealing with this nightmarish situation, I have had many conversations with David's friends and Navy colleagues as well as family members. All of us agree that this is a complete aberration in David's life. It came as a huge shock to us all that David would have been involved with child pornography. David is one of the most honorable people I have ever met in my life. This sad, tragic mistake on his part is one that I know for a fact he deeply regrets. He has admitted to me and my family as well as his close friends that he is terribly ashamed that he got to this point in his life. He somehow got addicted to pornography. He realizes it is wrong and that he needs counseling to get through this. He wants to take advantage of all counseling available, and I am confident that he will overcome this addiction.

My brother has spent the last twenty years of his life serving his country in many capacities. He has been a recruiter, drill instructor, gas turbine engineer, inspector of ships in ports as well as many other day-to-day duties. He is a veteran of Desert Shield and Desert Storm as well as the Iraq War, and has served in other places in the world during his Navy service.

He has been a leader to many in the Navy as well as an inspiration to all he meets. He has been proud to serve his country. For his career to end this way is very, very sad. I want to emphasize that my brother is a great person, this situation notwithstanding. He is a hard worker and very intelligent. He has always been an upstanding member of the community. This is so completely out of character that it is staggering to me as well as anyone who knows him. But I have great faith and belief in my brother. If he swears to me, as he has, that he is sorry and he will not ever let this happen again, then that is the way it will be. I, as well as my entire family, will be backing him every step of the way. We love him very much, and we will be here for him in whatever way is necessary.

● Page 2									June 27, 2007

In fashioning an appropriate sentence for David, I only ask that you consider that my brother is a very productive member of society who has absolutely no criminal record. He will find a way to come through and find a way to make some good out of it. Knowing David, I have no doubt that this is a one-time event that will never happen again.

With all of this in mind, I would like to ask you for leniency in his sentence. My brother, David Maisenhelder is not and will not be a repeat offender. He deserves the shortest sentence possible so that he can return to his life. And his life will be spent around his family and friends after being away for twenty years serving his country. While he deserves to be punished, I know that you will weigh his life of honor and service against this aberrational conduct and reach a fair sentence. I know you have a difficult job, but I am confident that you will temper justice with mercy.

I also would request that you recommend that he serve his prison sentence in a facility as close to St Louis, Missouri as possible. It will be a good thing for family and friends, especially my 65-year-old Mother, to be able to visit as frequently as possible so that we can support him through this time.

Thank you for your time and consideration.


Sincerely,

*[signature]*

Sheryl Maisenhelder

# Exhibit

# 3

August 21, 2007

In regards to: David Maisenhelder 313630

Tony W. Miles
Office of the Federal Public Defender
625 Indiana Avenue NW  Suite 550
Washington DC  20004

To Whom It May Regard,

I'm writing to the court to provide some reference to the character of David Maisenhelder. I've known David since I was in third grade. We met in school and remained close friends over the years. I'm now 38 years old and still consider him to be one of my closest friends. We have made every effort to stay as close as possible even when he has been stationed a great distance away, while he has been serving his country in the Navy.

He has always been there for me anytime I needed him. When my brother died in October 2001, he got leave and drove straight home from Norfolk, Virginia to St.Louis, Missouri to be there for me and my family. It meant a lot to me. Not just anyone would go through that trouble for a friend. He has always been a man of his word. When he told me he was going to do something for me he meant it and I had no doubt that he would follow through.

He very rarely drank alcohol and he didn't do drugs. He always seemed to me to be an All-American kind of guy. He served his country since he entered the Navy at the age of 18 and was extremely proud of that. I can't think of many people more reliable and grounded than David.

As hard as it is to believe what he is going through, he has expressed complete responsibility for what he has done. Even though it has embarrassed him and made him feel horrible for what his family, especially his mother, and friends have had to go through, he didn't hesitate to admit he has done wrong and needs treatment. From the beginning, he has stated that he needs rehabilitation and help for the issues he is dealing with before the court.

I know from talking to him that he feels badly for what he has done. This is not only because of the problems he is dealing with on a personal level but for anyone else that may have been affected because of his actions. He is a good man that made a mistake. To me it would be a waste to society to remove him to a correctional facility any longer than is needed to treat him for his problems. I can't imagine him ever intentionally hurting another human being.

I fully realize the charges he is facing before the court and would not hesitate to spend time with him as soon as I was allowed by the court. I believe in forgiveness and second chances. As far as I'm concerned this is his first major mistake and he needs to be given a second chance.

Sincerely,

*[signature]*

Adam Cook

7125 SOUTH ST. #101
MAPLEWOOD, MO   63143

# Exhibit

# 4

307 East 54th Street
Savannah, GA 31405

August 27, 2007

Honorable Colleen Kollar-Kotelly
United States District Court for the District of Columbia
333 Constitution Avenue NW
Washington, DC 20001

Dear Judge Kollar-Kotelly

I am writing in reference to my nephew, David Maisenhelder, who will be appearing before you in the near future to be sentenced for his involvement in a serious crime. I am writing not to defend or excuse his behavior but simply to ask that you consider his entire character and background in determining the appropriate sentence for him.

David's arrest on child pornography charges was a shock to me. Until the day I received the news of these charges, I had regarded David as the ultimate straight arrow in both his character and behavior. During his youth, his primary goal was to serve his country in the military. Upon graduation from high school, he accomplished this goal by joining the United States Navy. He served almost 20 years with honor and distinction. He had planned to retire in 2007 until this incident brought an abrupt and unseemly end to his naval career.

Although the arrest was a shock to me, his response was more typical of his character. David immediately took full responsibility for his actions and has made no effort to blame others for his downfall. He has acknowledged without qualification that he has no one to blame but himself.

David's mother (my sister) and his siblings are heartbroken by his conduct but nonetheless will stand by him through this difficulty. When he is released from prison, he will have their support and encouragement to make a transition to a normal life.

As the judge in this case, you must decide the appropriate penalty for David's conduct. The prosecution will present a harsh portrait of David with emphasis on his criminal conduct, conduct I do not excuse much less condone. I respectfully ask that you balance

this portrait with the positive aspects of his entire life and character in rendering your decision, and that you show leniency and compassion toward David.

Thank you for your attention and consideration.

Sincerely yours,

Joseph Terrell McNellage