UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal No.  07-036 (CKK) |
| | : | |
| **DAVID MAISENHELDER ,** | : | Sentencing Date: 9-21-07 |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing to assist the Court in the sentencing of the defendant, David Maisenhelder.

### FACTUAL BACKGROUND

On June 6, 2007 before this Court, the defendant entered a plea of guilt to Count One of the Indictment charging him with Transportation of Visual Depictions of Minors Engaging in Sexually Explicit Conduct.  The evidence proffered at the plea hearing, and accepted by the defendant as being true and correct revealed that on November 1, 2006, Detective Timothy Palchak, a member of the Metropolitan Police Department (MPD) Regional Internet Crimes Against Children's Task Force began an on-line investigation in search of individuals who possessed, distributed, produced, or received images of children depicted in pornographic materials.  On that date, in an undercover capacity at a location in the District of Columbia, Detective Palchak entered an "Incest Taboo" website posing as a 35 year old male with the screen name of "james."

Detective Palchak was contacted in the "Incest Taboo" website chatroom by an individual using the screen name "Pastor" with the e-mail address hngcock2000@yahoo.com.[1]  During the

---

[1] While Detective Palchak initially met the defendant in the "Incest Taboo" chatroom, he asked him to switch over to the MSN chatroom since the Incest Taboo Chatroom had no ability

online conversation, before switching to "MSN, "Pastor" stated to "james" that he was "active," that is that he engaged in sex with children and that he had access to them. After switching over to "MSN," You me (formerly "pastor") went on to explain to "james" that he had access to children ages five to fifteen years old, that he watches children on weekends and referred to himself as a "trusted person." When Detective Palchak inquired how "You me" prevented the children from disclosing the sexual activity, "You me" replied that he "has his ways" and inserted the image of a smiley face [(:].

Detective Palchak, using the screen name "james" told "You me" that he had access to a 10 year old girl who was the daughter of "james's" girlfriend, a prostitute, and that he engaged in sex acts with the child in exchange for money he paid to the mother. "You me" expressed interest in meeting "james" and the 10 year old and described sex acts he wanted to perform on the child. He also told Palchak that he would bring "a party favor." When "You me" asked Palchak what age child he preferred, Palchak stated that he wanted a child five to seven years old. Thereafter, "You me" told Palchak that if he was up for a [five to seven] year old that he was as well. The chat lasted approximately one hour and twenty minutes.

On November 21, 2006, Palchak was again online in an undercover capacity on a computer in the District of Columbia and using the screen name "james," as well as that of "james p" and entered the "Incest Taboo" website. When he learned that the defendant was also online, he again asked him to switch to another chatroom, which he did. The individual with the email address

---

to archive and thus no way to capture the substance of the chat, unlike MSN which does have that capacity. When the defendant switched over to the MSN chatroom, his screen name changed to "You me" although the two continued to make reference to the "Pastor" screen name in their initial chat.

hngcock2000@Yahoo.com using the screen name "You me" and Palchak engaged in an online chat for approximately fifteen minutes. During the conversation, "You me" stated that he had sex with a nine year old girl the same day. He forwarded to Palchak a photograph of a young girl whom he stated was the nine year old child with whom he engaged in sex.

On February 5, 2007, Palchak was again online on a computer in the District of Columbia, and using the screen name "jimmyped1." Palchak observed that "You me," who was on his "buddy list" was also online. Palchak contacted "You me," with the display email address of hngcock2000@Yahoo.com. They engaged in conversation on the internet for approximately one hour. During the conversation, "You me" forwarded via the internet an image of an adult woman holding a small child who appeared to be approximately three years old. "You me" stated that he had engaged in sexual intercourse with the child while babysitting her while her mother went to the nail salon.

During the online conversation, "You me" sent to Palchak via the internet seven still images and three videos in which minor children were depicted engaging in sex acts and posing in a suggestive manner so as to expose their genitalia. The majority of those images depicted prepubescent females. Included in the images that the defendant sent to Detective Palchak on February 5, 2007, were images of infants and a child approximately 18 months old with adult males' penises in their mouths, images of children who appeared to be three to four years old being digitally penetrated and a video depiction of a child approximately five years old being penetrated vaginally by an adult male's penis. At one point in the on-line conversation, "You me" asked Palchak whether he wanted a picture to masturbate to and forwarded to Palchak several images that depicted infants and a young girl approximately five years old with penises in their mouths.

Account information obtained from the internet service provider Cox Communications indicates that the customer using the e-mail address hngcock2000@Yahoo.com was DAVID MAISENHELDER with a mailing address of 5001 Belton Road, Chesapeake, Virginia 23325-3607, telephone number (757) 545-4480. Further investigation determined that MAISENHELDER was on active duty with the United States Navy, that he is unmarried and has no dependents. Military records listed his current address as 5001 Belton Road, Chesapeake, Virginia. MAISENHELDER had also informed military personnel that he lived alone. The address for MAISENHELDER was confirmed by current Virginia Department of Motor Vehicle records and by telephone company records which listed the telephone number (757) 545-4480 as being assigned to DAVID MAISENHELDER, 5001 Belton Road, Chesapeake, Virginia.

On February 8, 2007, detectives from MPD and Agents from the Naval Criminal Investigative Service (NCIS) went to Chesapeake, Virginia to execute a search warrant issued by the United States District Court for the Eastern District of Virginia for MAISENHELDER's home at 5001 Belton Road. Detective Palchak, who went with NCIS agents to defendant's place of employment on a nearby Naval ship, spoke to the defendant after advising him of his Miranda rights. After waiving his rights, defendant admitted that he was the one chatting with Detective Palchak on February 5, 2007 and had sent him several child pornographic images via the internet. Defendant also stated that they would find at least 100 images of children engaging in sexually-explicit conduct during the search of his residence. Notwithstanding his discussions during his online chats with Detective Palchak to the contrary, defendant denied that he was also engaging in sex with minors.

MPD officers and NCIS agents searched the defendant's house on February 8, 2007, in the presence of officers from the Chesapeake Police Department. Among the items recovered were

numerous data storage devices, including a computer, compact discs and digital memory sticks, many of which contained pornographic images. A forensic analysis of the images has identified over 2,000 images that would constitute child pornography under federal law.[2]

## VICTIM IMPACT

If this case had gone to trial, the government would have proven through expert testimony, that the images exchanged in the online conversations and stored on defendant's personal computer and other storing devices depicted real images of children, including the identification of known victims depicted in many of the still images, and expert testimony concluding that it is all but impossible to create virtual images for video movies – that is – video movies contain only real images of children.[3] Indeed, according to the National Center for Missing and Exploited Children ("NCMC"), at least 167 of the over 2,000 child pornographic images recovered from defendant's computer were those of known and identified victims of child pornography production.[4]

Courts have frequently recognized the potential harm to the children that have been victimized by child pornographers and pedophiles. <u>New York v. Ferber</u> is the leading Supreme Court case to address pornography and its harm to children. <u>New York v. Ferber</u>, 458 U.S. 747

---

[2] The defense attorney has viewed and verified only 600 of those pornographic images. As agreed to in ¶ 6 of the Plea Agreement, for sentencing purposes, the defendant acknowledges that he possessed at least 600 images containing child pornography on his personal computer and other electronic storing devices seized during execution of the search warrant of his personal residence.

[3] The government would further prove that the images the defendant sent to Detective Palchak and the images that were recovered during the search of his residence, traveled in interstate commerce by means of the internet, and were images of actual minor children.

[4] The government is in the process of obtaining victim impact statements on file at NCMC of some of the identified victims depicted in the computers and storage devices seized from the defendant which will be provided to the Court prior to sentencing.

(1982). The Ferber Court accepted the New York legislature's judgment by saying that, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." Id. at 758. The Court further cited a report that found, "that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." Id., citing Schoettle, Child Exploitation: A Study of Child Pornography, 19 J. Am. Acad. Child Psychiatry 289, 296 (1980). To address the longer term effects of child pornography on the victim, the Court cited an authority that addressed the issue:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. Shouvlin, Preventing the Sexual Exploitation of Children: a Model Act, 17 Wake Forest L. Rev. 535, 545 (1981).

Mimicking the finding of harm in Ferber the National Center for Missing and Exploited Children found that:

> It is important to realize these images can have a devastating and lasting effect on children. In addition to any physical injuries they can suffer in the course of their molestation, such as genital bruising, lacerations, or exposure to sexually transmitted diseases, child victims can also experience depression, withdrawal, anger, and other psychological disorders. Such effects may continue into adulthood. For instance women abused as children have statistically significant high raters of nightmares, back pain, headaches, pelvic pain, eating binges, and other similar symptoms...The lives of children featured in these illegal images are forever altered, not only by the molestation but by the permanent record of the exploitation. Once sexual exploitation takes place, the molester may document these encounters on film video. This documentation can then become the "ammunition" needed to blackmail the child into further submission, which is necessary to continue the relationship and maintain its secrecy. National Center for Missing and Exploited Children, What is Child Pornography? available at,

http://www.missingkids.com/missingkids/servlet/pageservlet?languagecountry=en_us&pageid=1504(last visited 2/23/2007).

## **GUIDELINE RANGE**

Undersigned counsel agrees with the United States Sentencing Guidelines ("U.S.S.G. or Guidelines") calculations prepared by the presentence report writer – that is that the base Offense level is 22 (USSG §2G2.2(a)(2)); that there should be a 2 point increase because the materials involved prepubescent minors and minors who had not yet attained the age of 12 (USSG § 2G2.2(b)(2) and comment (n.1)); that there should be a further 2 point increase because defendant used a computer to commit the crime (USSG § 2G2.2(b)(6)); that there should be a 4 point increase because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence (USSG § 2G2(b)(4)); and finally that there should be a 5 point increase because the offense involved over 600 child pornographic images (USSG § 2G2.2(b)(7). The government also agrees that the defendant should receive a 3 point decrease for acceptance of responsibility[5], bringing the total adjusted offense level to 32, with a U.S.S.G. range of 121 to 151 months.

---

[5] The United States respectfully moves the Court pursuant to § 3E1.1(b) of the Guidelines, to adjust the defendant's offense level down one level, reflecting the defendants' early plea of guilty in this matter. As grounds for this request, the government cites the defendant's early determination to enter a plea of guilty in this matter. As a consequence, the resources of this Court, the United States Attorney's Office and the Metropolitan Police Department ("MPD") were conserved. The United States and MPD did not have to expend time, energy and resources in preparing for the trial in this matter and Court time was preserved as well.

## THE COURT SHOULD IMPOSE A SENTENCE
## <u>WITHIN THE GUIDELINE RANGE</u>

The Court should impose a prison term of between 121 to 151 months.  The government's plea offer to the defendant, as memorialized in the plea letter, was both measured and reasonable, taking into consideration the U.S.S.G., as well as the sentencing factors of 18 U.S.C. § 3553.  In doing so, we made several concessions, including our motion for acceptance of responsibility and agreeing not to oppose a sentence at the low end of the Guidelines.  All of this reflects our careful consideration of 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 3) the need to afford adequate deterrence to criminal conduct; 4) the need to protect the public from further crimes of the defendant; 4) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective matter, as well as the other 3553 factors.

For the foregoing reasons, the Government respectfully requests this Court to impose a sentence within the Guideline range.

    Respectfully submitted,

    JEFFREY A. TAYLOR
    UNITED STATES ATTORNEY
    D.C. Bar Number: 498610

By: _____
    DEBRA L. LONG-DOYLE
    D.C. Bar No. 362518
    Federal Major Crimes Section
    555 4th Street, N.W., 4th Floor
    Washington, D.C. 20530
    (202) 305-0634
    Debra.Long-Doyle@USDOJ.Gov